R. A. McMASTER, APPELLEE, v. C. E. DOUTHIT ET AL, APPELLANTS.

FILED DECEMBER 7, 1906. No. 14,461.

Evidence examined, and *held* to sustain the findings and decree of the trial court.

APPEAL from the district court for Dixon county: GUY T. GRAVES, JUDGE. *Affirmed.*

*C. A. Kingsbury and F. S. Berry,* for appellants.

*John V. Pearson and F. A. McMaster, contra.*

ALBERT, C.

The appellant Douthit built a house for the appellee. The other appellant furnished a large portion of the ma-

terial. After the house was built, and within the time required by law, the appellants each filed a lien against the premises on which the house was built, Douthit claiming $1,329.86 for labor and material furnished by him, the lumber company claiming $1,169.86 for material furnished by it. Afterwards the appellee brought this suit against the appellants, alleging in effect, among other things, that the house had been erected under a contract between herself and Douthit, whereby it was agreed that he should furnish the labor and material necessary to build the house for $1,965, and that afterwards certain minor changes were agreed on, and the price thereof fixed, whereby the contract price was raised to $2,045, which amount had been fully paid to Douthit before his lien was filed; that she never had any contract with the appellant lumber company to furnish the material for the erection of the house, and that its contract therefor was with the appellant Douthit. She further alleges these liens stand of record and constitute a cloud on her title, and asks to have them canceled and the cloud removed. The appellants, in addition to certain defenses, each filed a cross-petition, asking a foreclosure of his lien. The court granted the appellee the relief prayed, and the appellants prosecute separate appeals.

The case between the appellee and Douthit involves only a question of fact, the former claiming in effect that the latter agreed to build the house and furnish all the labor and material necessary therefor for $2,045, the latter claiming, in effect, that he agreed to build the house and to furnish the labor and material necessary therefor, but that no price was fixed. It is conceded that before the building was commenced the plaintiff submitted a rough plan thereof to Douthit, and that he offered to build the house for $1,850. The parties then took the rough plan to an architect, who prepared plans and specifications in detail.

According to the testimony of the plaintiff's husband, who acted for her throughout the entire transaction, there

was a little delay in getting the plans, and when the ground plan was brought to the attention of Douthit he insisted that it called for a house somewhat larger than the one he had agreed to build for $1,850; that after some discussion it was agreed that Douthit should proceed with the building, and should be allowed $1,965, instead of $1,850; that some minor changes were afterwards made, the price of which was fixed by agreement in advance, raising the entire price at which Douthit was to build the house to $2,045. In short, the testimony of this witness is to the effect that there was a definite and fixed price to be paid for the erection of the building. This testimony is corroborated by that of numerous other witnesses, who testified, in effect, that at various times while the building was in progress Douthit complained of his contract, stated that he was losing money bv it, expressing the wish that he was out of it, all tending to show that he fully understood while the work was in progress that he was bound to finish the building at a fixed price.

According to Douthit's testimony, when the plans of the architect were first submitted to him, or a portion of them, he called the attention of appellee's husband to the fact that such plans called for an entirely different house than the one he had agreed to build for $1,850, and that the appellee told him to proceed with the erection of the house according to the plans and specifications, and she would pay him the difference, or what the work and material was reasonably worth. This testimony is corroborated by that of another witness, who testified to a conversation he overheard between Douthit and appellee's husband tending to show the same state of facts. But the force of this corroborating testimony is much impaired by the subsequent testimony of the witness showing that he dealt with the parties on the theory that the consideration to be paid Douthit for building the house was fixed by contract. Aside from the testimony of this witness, the only evidence relied on as corroborating Douthit is such as tends to show that the amount for which

the appellee claims he agreed to build the house was far below what it was reasonably worth. To our minds, such evidence is entitled to little, if any, weight. If evidence that the obligations which a party has assumed by his contract are onerous and burdensome is to be received as evidence that he never made the contract, it would be an easy matter to avoid a bad bargain. Besides, it sometimes happens that a contractor purposely undertakes to erect a building for less than the work can be done, expecting to recoup on extras, or by a showing of such departures from the original contract as would enable him to recover on a *quantum meruit*. The record would indicate that something of that kind has been attempted in this case. We are satisfied that the appellee established her theory of the transaction by a clear preponderance of the evidence.

. We come now to the appeal of the lumber company. Its original cross-petition was framed on the theory that it had filed a subcontractor's lien for material furnished to Douthit, as contractor, for the construction of the building. It afterwards filed an amended cross-petition, framed on the theory that the material was furnished under a direct contract with the appellee. The evidence is clear and conclusive that the material was furnished to Douthit. It was charged to him on the books of the lumber company. There is no evidence that we have been able to discover in the record tending to show a direct contract between the appellee and the lumber company for this material. On the contrary, the evidence adduced on behalf of this company itself shows that they knew that Douthit was under a contract to build the house for a stated consideration. Their agent who transacted the business for them testified on their behalf as a witness. Running through his testimony are to be found statements which show that at the time the material was furnished he had in mind the possiblity that Douthit might lose money on the contract and not be able to pay the bills for material furnished. Taking this evidence in connection with the testimony hereinbefore referred to showing

50

a contract for the erection or construction of the building for a specified sum, it precludes the idea that Douthit was the agent of the appellee, or could bind her for this material, or that the lumber company had any reason to believe he had. The lumber company's rights, if it has any, are those of a subcontractor, but, as it made its election in the district court to proceed on the theory that it had a direct contract with the appellee to furnish this material, it is bound by that theory now. It might be said, in passing, that its election to proceed on that theory was not ill advised, because, under the evidence, its lien would be defeated on either theory.

The decree of the district court is clearly right, and we recommend that it be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.